**Nos. 18-1809 and 18-1821**

# In the
# United States Court of Appeals
## for the Seventh Circuit

HYUNG SEOK KOH, et al.,

*Plaintiffs-Appellees,*

v.

SUNG P. KIM, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:11-cv-02605.
The Honorable **Edmond E. Chang**, Judge Presiding.

## REPLY BRIEF OF DEFENDANT-APPELLANT
## SUNG PHIL KIM

JOHN ALLEN WALL
  *(Counsel of Record)*
JAMES V. FEROLO
CARMEN P. FORTE, JR.
KLEIN, THORPE AND JENKINS, LTD.
20 North Wacker Drive
Suite 1660
Chicago, Illinois 60606
(312) 984-6400

*Attorneys for Defendant-Appellant*

 

Table of Contents

Table of Contents…………………………………………………………..…........ii

Table of Authorities……………………………………………………….....iv

Argument……………………………………………………………………...1

I.    This Court Has Jurisdiction Over Kim's Interlocutory Appeal Of The District Court's Denial Of His Summary Judgment Motion Based On Qualified Immunity ……………………………………………….………..3

A.    Legal Principles Governing Appellate Court Jurisdiction Over Qualified Immunity Appeals …..……………………………………………..3

B.    Koh Incorrectly Contends This Court Lacks Jurisdiction Over Kim's Appeal……………………………………………………………........7

1.    Koh's Examples Of Disputed Facts Underlying Kim's Legal Arguments…………………………...……………………...……8

2.    Kim's Legal Arguments Do Not Depend On Disputed Facts Contrary To Koh's Representations……………………...……………………9

a.   Kim Asserts Insufficient Evidence Of Intent………………..9
b.   Kim Lacked Knowledge Of The Investigations…………...10
c.   Kim Minimizes His Role In The Interrogation……………11
d.   Kim Asserts The Evidence Is Insufficient To Show Conspiracy………………………………………………13
e.   Kim Contends The *Miranda* Warnings Were Sufficient….13
f.   Kim Contends There Were Just Two Translation Errors...14
g.   Kim Contends The Translation Of *Gachi Jookja* Was Not Deceptive……………………………………………...15
h.   Disputes That His Actions Caused Koh To Confess……...15
i.   Kim Incorrectly Asserted The District Court Analyzed Only One Of His Actions…………………………………16

II.    The District Court Erred When It Denied Kim Qualified Immunity……………..17

      A.    This Court Should Find That Kim Did Not Violate Koh's Fifth
           Amendment Protections Against Coerced Confessions …………………..18

      B.    This Court Should Reject Koh's Undeveloped Contentions That Kim's
           Arguments Demonstrating The District Court Erred In Determining
           Clearly Established Law Provided Kim Notice That His Conduct Violated
           Koh's Fifth Amendment Rights Are Unpersuasive………………………...20

            1.  Kim Provided Incomplete And Misleading *Miranda* Warnings………22

            2.  Kim Played An Important Role Throughout The Interrogation………22

            3.  Kim's Argument Depends On Utterly Irrelevant Cases………………23

            4.  Koh's Remaining Comments About Kim's Qualified Immunity
                Arguments Are Ineffective…………………………………………………..24

      C.    The Admission of Koh's Confession At Trial Severed The Causal Chain
           Thereby Entitling The Defendants To Qualified Immunity………………26

Conclusion…………………………………………………………………………...27

Certificate Of Compliance With Circuit Rule 32(c)………………………………….28

Certificate Of Service………………………………………………………………..29

Table of Authorities

<u>Cases Cited</u>                                                                              <u>Page(s)</u>

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074 (2011)…………………...…………….19

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)………………………………..…….6

*Bakalis v. Golembeski*, 35 F.3d 318 (7th Cir. 1994)…………………………...…………..2, 8, 18

*Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834 (1996)………………………………5, 6, 12

*Carrion v. Butler*, 835 F.3d 764 (7th Cir. 2016)……………………………………………...20, 25

*Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S. Ct. 1221 (1949)…………3

*City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015)…………………20, 24, 25

*Erwin v. Daley*, 92 F.3d 521 (7th Cir. 1996)……………………………………………………18

*Estate of Williams by Rose v. Cline*, 902 F.3d 643 (7th Cir. 2018)…………………2, 5, 7, 18, 19

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017)………………………………………..18

*Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018)………………………………………………....16, 17

*Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151 (1995)……………………………………4, 5, 6, 12

*Lewis v. City of Chicago*, 2019 WL 289104 (7th Cir. 2019)……………………………………16

*Martinez Camargo v. I.N.S.*, 282 F.3d 487 (7th Cir. 2002)……………………………………..23

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806 (1985)…………………………3, 4, 5, 12, 25

*Mullenix v. Luna*, 136 S.Ct. 305 (2015)………………………………………………………...19

*Ortiz v. Jordan*, 562 U.S. 180, 131 S.Ct. 884 (2011)……………………………………………..6

*Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016)………………………………………..……2, 18, 19

*Plumhoff v. Rickard*, 572 U.S. 765, 134 S.Ct. 2012 (2014)…………………………….......6, 19

*Reichle v. Howards*, 556 U.S. 658, 132 S.Ct. 2088 (2012)…………………………………...19

*Stinson v. Gauger*, 868 F.3d 516 (7ᵗʰ Cir. 2018)…………………………………………..5, 12

*Taylor v. Barkes*, 135 S.Ct. 2042 (2015)…………………………………………………24, 25

*Upton v. Thompson*, 930 F.2d 1209 (7ᵗʰ Cir. 1991)…………………………………………13

*U.S. v. Romo-Chavez*, 681 F.3d 955 (7ᵗʰ Cir. 2012)…………………………………..........23

*White v. Pauly*, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017)………………………………….18

<u>Statutes</u>                                                                                              <u>Page(s)</u>

28 U.S.C. § 1291……………………………………………………………….………4

Argument

The Defendant-Appellant, Village of Wheeling police officer Sung P. Kim ("Kim"), filed an appeal with this Court seeking reversal of an order of the United States District Court for the Northern District of Illinois, Eastern Division, denying him summary judgment on the plaintiff, Hyung Seok Koh's ("Koh"), claim that Kim violated Koh's Fifth Amendment rights by coercing a confession from the plaintiff on April 16, 2009. Kim sought summary judgment on the coerced confession claim based on qualified immunity.

Kim argued in his initial brief that the District Court addressed both prongs of the qualified immunity analysis, but committed errors which resulted in a denial of his motion for summary judgment. *Brief and Short Appendix of Defendant-Appellant Sung Phil Kim*, Doc: 13-1 at 15.[1] On the issue of whether Kim violated Koh's 5th Amendment right to be free from coerced confession, the District Court imputed to Kim knowledge and information available only to Northbrook Police Department detectives Mark Graf ("Graf") and John Ustich ("Ustich") and failed to recognize from the undisputed facts that Kim lacked intent to violate Koh's rights against self-incrimination. *Id*. at 15-16. Specifically, by attributing to Kim knowledge of certain facts concerning the investigation into whether Koh killed his son which were available to Graf and Ustich, but not to Kim, the District Court failed to assess individually the Wheeling police

---

[1] "Doc #, p. ____" refers to the document designation on this Court's docket. "Appx. at p. ____" refers to the Appellants' required Short Appendix which is part of Kim's initial appellate brief.

officer's right to qualified immunity in violation of clear Seventh Circuit caselaw. *See, e.g., Bakalis v. Golembeski*, 35 F.3d 318, 326-327 (7th Cir. 1994; *Petties v. Carter*, 836 F.3d 722, 731-733 (7th Cir. 2016); *Estate of Williams by Rose v. Cline*, 902 F.3d 643, 651 (7th Cir. 2018). Doc. 13-1 at pp. 16-17. With regard to the second prong of the qualified immunity analysis, Kim argued the District Court mistakenly determined that clearly established law put him on notice that his actions while participating in the interrogations of Koh conducted by detectives Graf and Ustich at the Northbrook police department violated Koh's Fifth Amendment protections against coerced confession. *Id*. at pp. 23-47. Careful examination of the case law the District Court considered in determining Kim was not entitled to qualified immunity shows these cases fail to satisfy the standards for "clearly established law" established by the United States Supreme Court in a number of recent decisions. *Id*. at pp. 32-42. For these reasons, the District Court's denial of Kim's summary judgment motion should be reversed.

Koh, in his response, argues that this Court should dismiss Kim's appeal for lack of jurisdiction. *Response Brief of Plaintiffs-Appellees Hyung Seok Koh and Eunsook Koh*, Doc: 35 at pp. 22-32. He also contends that Kim's substantive arguments lack merit for a variety of reasons. Based on these arguments, Koh asks this Court to affirm the District Court's denial of Kim's motion for summary judgment based on qualified immunity.

I.     This Court Has Jurisdiction Over Kim's Interlocutory Appeal Of The District Court's Denial Of His Summary Judgment Motion Based On Qualified Immunity.

The gist of Koh's jurisdictional argument is that Kim impermissibly presents factual challenges rather than legal issues in his appeal.  Yet, a careful reading of Supreme Court and Seventh Circuit caselaw governing appeals of denials of summary judgment based on qualified immunity indicates this Court has jurisdiction over Kim's appeal.

A.     Legal Principles Governing Appellate Court Jurisdiction Over Qualified Immunity Appeals.

The collateral order doctrine originated with *Cohen v. Beneficial Industrial Loan Corporation* wherein the Supreme Court recognized a certain class of "collateral orders" which were immediately appealable even though the trial court may have entered them long before a lawsuit concluded. 337 U.S. 541, 69 S.Ct. 1221 (1949).  The Supreme Court, in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806 (1985), applied the collateral order doctrine to qualified immunity cases and outlined standards an appellate court should follow in reviewing a district court's denial of a qualified immunity claim:

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim.  All it need determine is a question of law:  whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated

> clearly established law, whether the law clearly proscribed the
> actions the defendant claims he took.

*Id*. at 528.  The *Mitchell* court held that, "a district court's denial of a claim of qualified immunity to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."  *Id* at 529.

In *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151 (1995), the Supreme Court affirmed the Seventh Circuit's determination that it lacked jurisdiction over the defendants' qualified immunity appeal.  The Supreme Court characterized the issue before it as the appealability of a district court's summary judgment decision on a qualified immunity claim that involves a question of "evidence sufficiency," or "which facts a party may, or may not, be able to prove at trial."  *Id*. at 313.  The Supreme Court concluded a qualified immunity case that turned on evidence sufficiency "is not appealable."  *Id*.  The Supreme Court described the class of cases that properly could be considered on an interlocutory appeal:

> The upshot is that, compared with *Mitchell*, considerations of delay,
> comparative expertise of trial and appellate courts, and wise use of
> appellate resources argue in favor of limiting interlocutory appeals
> of "qualified immunity" matters to cases presenting more abstract
> issues of law.  Considering these "competing considerations," we
> are persuaded that "[i]mmunity appeals . . . interfere less with the
> final judgment rule if they [are] limited to cases presenting neat
> abstract issues of law."

*Id.* at 317.  The *Johnson* court did recognize that a qualified immunity appeal could pose a mixed question of law and fact.  The Court noted in this regard that, "[w]e concede that, if the District Court in this case had determined that beating respondent violated clearly established law, petitioners could have sought review of *that* determination."  *Id.* at 318 (emphasis in original).  *See Estate of Williams by Rose v. Cline*, 902 F.3d 643, 650-651 (7th Cir. 2018) (Seventh Circuit determines that it has jurisdiction to answer the second question before it – whether the alleged constitutional right at issue was clearly established at the time of the alleged incident even if the court lacked jurisdiction to consider other arguments raised on appeal that were intertwined with disputed facts); *Stinson v. Gauger*, 868 F.3d 516, 532 (7th Cir. 2018) ("Indeed, the Court acknowledged in *Johnson* that many qualified-immunity appeals are of this mixed variety.")  *Johnson*, 515 U.S. at 318-19, 115 S.Ct. 2151 (dissenting opinion).  Applied to the instant matter, *Johnson* instructs that this Court has jurisdiction over Kim's interlocutory appeal on questions that pose an abstract issue of law.

Subsequent Supreme Court decisions have commented on *Johnson v. Jones*. *Behrens v. Pelletier* noted the respondent argued that an appeal of a denial of summary judgment was unavailable since the district court's decision was based on material issues of fact.  The respondent argued the presence of material factual matters "renders the denial unappealable under last Term's decision in *Johnson v. Jones*, 515 U.S. at 313- 318, 115 S.Ct., at 2156-2158."  516 U.S. 299, 312, 116 S.Ct 834 (1996).  The Supreme Court

characterized the respondent's understanding of *Johnson* as "a misreading of the case." *Id.* The *Behrens* court identified the appealable type of summary judgment decision allowed under *Johnson v. Jones*: "*Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity . . . typically, the issue whether the federal right allegedly infringed was 'clearly established'." *Id.* (citations omitted). Related to Kim's appeal, the questions he presents relating to "clearly established law" should be considered under the collateral order doctrine.

Other Supreme Court decisions reiterate that appellate courts have jurisdiction to review interlocutory appeals based on purely legal issues. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 674, 129 S.Ct. 1937 (2009); *Ortiz v. Jordan*, 562 U.S. 180, 188, 189, 131 S.Ct. 884 (2011) ("We need not address this argument, for the officers' claims of qualified immunity hardly present 'purely legal' issues capable of resolution 'with reference only to undisputed facts. Cases fitting that bill typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law); *Plumhoff v. Rickard*, 572 U.S. 765, 772-773, 134 S.Ct. 2012 (2014) ("Thus, they [Petitioners] raise legal issues: these issues are quite different from any purely factual issues that the trial court might confront if the case were tried; deciding legal issues of this sort is a core responsibility of appellate courts, and requiring appellate courts to decide such issues is not an undue burden." *Id*. at 773.).

In a very recent opinion, *Estate of Williams by Rose v. Cline*, the Seventh Circuit, considered the type of facts which can defeat appellate review of a denied qualified immunity claim. 902 F.3d at 649. This Court noted that "mere mention of disputed facts" in an otherwise purely legal argument does not defeat appellate jurisdiction as long as "the legal argument *is not dependent on those factual disputes* – i.e., where the legal and factual arguments are separable." *Id*. (Emphasis added). Elaborating on the point, this Court explained that, "[i]f an argument is not dependent upon disputed facts, the court simply can disregard mention of the disputed facts and address the abstract issue of law." *Id*. Thus, disputed facts alone cannot lead to dismissal of Kim's appeal for lack of jurisdiction; rather, his legal arguments must be shown as predicated on such facts.

B.      Koh Incorrectly Contends This Court Lacks Jurisdiction Over Kim's Appeal.

Koh argues that this Court lacks jurisdiction over Kim's appeal for two reasons. First, Koh asserts that Kim, in his brief, challenged the District Court's factual determinations, presented his own version of facts as uncontested, ignored factual disputes and omitted facts that were adverse to his positions. Doc: 35 at p. 26. Second, Koh contends that Kim's arguments to this Court require resolution of factual disputes. Therefore, according to Koh, these arguments cannot be pure legal arguments over which this Court has jurisdiction under the collateral order doctrine. *Id*. at 23. Kim, however, accepts every finding of fact set forth by the District Court in its opinion denying summary judgment on Koh's Fifth Amendment claim, as well as all reasonable

7

inferences drawn from these facts.  Assuming, *arguendo*, that Koh does identify factual

disputes, he also must convince this Court that Kim's legal arguments depend on these

facts to prevail on his jurisdictional contention.

Kim's initial brief presents two basic legal arguments for this Court's

consideration:  (1) the District Court mistakenly failed to individually analyze Kim's

claim for qualified immunity as required by law, *see Bakalis v. Golembeski*, 35 F.3d 318,

326-327 (7th Cir. 1994) and (2) the District Court mistakenly determined that clearly

established law provided Kim with notice that his actions as an interpreter on April 16,

2009 could violate Koh's Fifth Amendment right against self-incrimination.  Kim's legal

arguments do not depend on and are separate from the alleged factual disputes Koh

attributes to him.  Indeed, these alleged factual disputes are irrelevant and immaterial

to the issue of this Court's jurisdiction over Kim's appeal.

> 1.    Koh's Examples Of Disputed Facts Underlying Kim's Legal
>       Arguments.

Kim propounds a laundry list of allegedly disputed facts which purportedly

"infect" Kim's legal arguments that include:  (i) Kim asserts insufficient evidence of

intent; (ii) Kim lacks knowledge of the investigation; (iii) Kim minimizes his role in the

investigation; (iv) Kim indicates the evidence is insufficient to show conspiracy; (v) Kim

indicates the *Miranda* warnings were sufficient; (vi) Kim contends there were just two

translation errors; (vii) the translation of *gachi jookja* was not deceptive; (viii) Kim

disputes that his actions caused Koh to confess; and (ix) Kim incorrectly asserted that

the District Court analyzed only one of Kim's actions.  Doc: 35 at p. 29.  Koh contends,

based on his representations, that, "Appellants' legal arguments cannot be separated

from these disputed facts, and cannot be resolved in Appellant's favor without

improperly accepting their alternate facts."  *Id*. at p. 30.  Koh is wrong.

2.      Kim's Legal Arguments Do Not Depend On Disputed Facts
        Contrary To Koh's Representations.

a.      Kim Asserts Insufficient Evidence Of Intent.

With regard to this alleged disputed fact, Koh refers to Kim's statement on p. 16

of his brief that, "[t]he undisputed facts available to the District Court failed to show

that Kim possessed the requisite intent to violate Koh's rights against self-

incrimination."  Whether this statement sets forth a disputed fact at all – as opposed to

being a characterization of the record before the District Court – is debatable.  Even if

Kim's statement is construed as a fact, Koh does not show that it is a matter of dispute.

The District Court's factual findings indicate Kim came to the Northbrook police

station to provide interpretation assistance to the Kohs.  Appx. at p. 6.  The District

Court's facts indicate an investigation into Paul Koh's ("Paul") death took place.

Nothing in the District Court's facts suggest that Kim participated in the investigation

or had any knowledge of it at the time of the interviews.  *Id*.  at pp. 6-7.  The District

Court describes a meeting Graf and Ustich had with their superiors prior to the second

interview of Koh.  *Id*. at pp. 10-11.  No facts indicate Kim was involved in the meeting or

knew anything about it.  Indeed, the District Court noted that Kim was not present at

the meeting.  *Id*. at 14.  The District Court characterized Kim as an interpreter both in its fact statement and the analysis section of its opinion.  *Id*. at pp. 6, 7-8, 9, 38-40, 42.  Koh does not counter Kim's assertion that his involvement was mainly as an interpreter.

Koh makes no attempt to identify which of Kim's legal arguments depend on the assertion of insufficient evidence of intent.  Nor does Koh explain how any of Kim's legal arguments were infected by an alleged factual dispute regarding lack of intent to coerce a confession.  Rather, Koh asks this Court to accept his contention and find it lacks jurisdiction over Kim's appeal without explanation.

> b.     Kim Lacked Knowledge Of The Investigations.

Koh identifies as a matter of dispute whether Kim had knowledge of the investigation into Paul's death.  Doc: 35 at p. 29.  Koh cites to pp. 17 and 19 of Kim's brief in support of his allegation.  On p. 17, Kim states "[n]owhere does the record indicate that Kim possessed even a shred of knowledge regarding the underlying investigation, even while he was present at the NPD, in the same room with Graf and Ustich."  And on p. 19, Kim notes that, "[a]s shown in the undisputed facts, Kim was not an active part of the investigation into Paul Koh's death when he was summoned to the NPD that morning, and he had never met Graf and Ustich prior to coming to the NPD."  For the reasons set forth in section I(B)(2)(a), *supra.*, the undisputed facts indicate Kim lacked any knowledge of the investigation into Paul Koh's death.  But, assuming that Kim has asserted matters of dispute, the jurisdictional question concerns

whether any of Kim's legal arguments depend on this disputed contention?  Koh does not answer this question; rather, he simply postulates a factual dispute and asserts it infects Kim's legal arguments.

c.     Kim Minimizes His Role In The Interrogation.

Assuming, *arguendo*, that Koh is correct that Kim's role in the interviews is a matter of dispute, the question remains whether his legal arguments depend on this allegedly disputed fact.  Koh points to Kim's brief at pp. 17-20.  Here, Kim sets forth the argument that, as a matter of law, a district court must make an individualized qualified immunity assessment for each defendant, especially when the facts differ from one defendant to another.  The District Court, in its statement of facts, indicates Kim was present on April 16, 2009 to provide translation assistance to the Kohs.  Appx. at pp. 7-8.  Clearly, Graf and Ustich did not share Kim's role.  It is this undisputed fact about the different roles of the defendants during the interrogations which provides the basis for the legal argument that the District Court failed to give proper individual assessment of Kim's qualified immunity claim, separate and apart from Graf and Ustich.

Koh also directs this Court's attention to pp. 32, 45 and 46 of Kim's brief as further examples of the Appellant minimizing his role in the interrogations.  On p. 32, Kim states that, "[a]ssuming *arguendo* that Kim's conduct as an interpreter during the interviews of Koh did violate the Plaintiff's Fifth Amendment rights, Kim should be

11

granted qualified immunity because at the time of his actions, the law was not clearly

established that an officer serving as an interpreter in an interview of a suspect in a

criminal investigation could violate that individual's Fifth Amendment right to refrain

from self-incrimination through occasional mistranslation of words or phrases." On p.

45, Kim notes that, "[s]econd, even if Kim was aware of the same facts and

circumstances as Graf, his role in the interviews as a Korean language interpreter was

profoundly different." On p. 46, Kim states that, "[t]hird, the fact that Graf and Kim did

have distinct roles in the interviews means that clearly established law regarding Graf

does not necessarily apply to Kim."

     The statements on pp. 32, 45 and 46 do not minimize Kim's role in the interviews

of Koh. Rather, the statements note that Kim served as a translator during the

interviews, a role the District Court acknowledged repeatedly in its *Memorandum*

*Opinion and Order* and that is undisputed. *See* Appx. at pp. 6, 7-8, 9, 38-40, 42. The

statements on pp. 32, 45 and 46 appear in the context of Kim's argument concerning

whether the law was clearly established on April 16, 2009 so as to put Kim on notice

that his actions as an interpreter for a suspect in a criminal investigation could violate

that suspect's Fifth Amendment right against self-incrimination. This argument

presents the prototypical abstract legal issue which should be reviewed by an appellate

court. *See, e.g., Behrens v. Pelletier*, 516 U.S. at 313, 116 S.Ct. 834; *Johnson v. Jones*, 515 U.S.

at 313, 115 S.Ct. 2151; *Mitchell v. Forsyth*, 472 U.S. at 526, 105 S.Ct. 2806; *Stinson v. Gauger*,

868 F.3d at 524; *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011); *Upton v. Thompson*, 930

F.2d 1209, 1212 (7th Cir. 1991).   Koh makes no attempt to explain how Kim's argument

is anything other than a pure legal argument which this Court can consider on appeal.

          d.        Kim Asserts The Evidence Is Insufficient To Show
                  Conspiracy.

      Koh cites to p. 18 of Kim's where the Appellant states that, "[t]he District Court's

ruling that Kim had 'shared knowledge' of the circumstances allegedly created by Graf

to coerce a confession from Koh, absent [of] any undisputed facts to support this theory,

does not show Kim had the requisite intent to participate in the conspiracy."   It is not

clear how Kim's claim of insufficiency of the evidence related to an intent to participate

in a conspiracy affects this Court's jurisdiction over either his argument that the District

Court failed properly to consider individually the appellant's qualified immunity claim

apart from Graf and Ustich or that the law was not clearly established so as to provide

him with notice that his actions in the interviews could violate Koh's right not to

incriminate himself.   Koh does not offer such an explanation.

          e.        Kim Contends The *Miranda* Warnings Were Sufficient.

      On p. 20 of his brief, Kim makes reference to the "summary translations of the

*Miranda* warnings to Koh."   The description of "summary translations" does not assert

that the *Miranda* warnings were "sufficient."   Further, the context of Kim's reference to

"summary translations" indicates that such rendering was "a notable translation err."

Doc: 13-1 at p. 20.  Thus, Koh's representation of the allegedly disputed fact is incorrect.

The statement concerning summary translation of *Miranda* warnings lies within Kim's argument that the District Court's failure to assess individually the defendant's claim for qualified immunity apart from Graf and Ustich was an error that prevented the court from granting the Wheeling officer summary judgment.  Assuming, *arguendo*, that Kim did assert that the *Miranda* warnings given were sufficient, Koh has not demonstrated how such an assertion infected the defendant's legal arguments to this Court.  Koh's example is irrelevant and immaterial to the issue of jurisdiction over Kim's appeal.

> f.      Kim Contends There Were Just Two Translation Errors.

Kim stated on p. 20 of his brief that, "[a]part from the summary translations of the *Miranda* warnings to Koh, the Plaintiff's expert could point to only one notable translation err by Kim – the confusing translation of 'not going out together is better.'" Doc: 13-1 at p. 20.  The statement comes within the context of Kim's argument that the District Court committed a mistake of law by not individually analyzing his qualified immunity claim apart from Graf and Ustich. *Id*. at pp. 17-21.  Koh makes no attempt to explain how Kim's legal argument depended on a disputed claim about the number of translation mistakes the Wheeling officer made.  Nor does Koh contend that this allegedly disputed fact had any bearing on Kim's argument concerning clearly established law at the time of the interviews.  This purportedly disputed fact is irrelevant to the jurisdictional issue.

        g.      Kim Contends The Translation Of *Gachi Jookja* Was Not Deceptive.

Koh next focuses on Kim's alleged assertion that his translation of *gachi jookja* was not deceptive.  Doc: 35 at p. 29.  Koh points to p. 20 of Kim's brief as supporting his allegation where the Appellant noted regarding the phrase *gachi jookja* that he "translated this into English as 'Okay, let's die together'. . . . This literal, word for word translation shows that Kim had no intention to deceive Koh, or to coerce a confession from him."  Assuming that Kim's statement is a matter of dispute between the parties, Koh still must show how the defendant's legal arguments were predicated on this disputed fact.  Koh fails to do so.

        h.      Kim Disputes That His Actions Caused Koh To Confess.

Koh contends that Kim disputed his actions caused the plaintiff to confess.  Doc: 35 at pp. 29-30.  In his brief, Kim refers to a number of facts from the District Court's *Memorandum Opinion and Order* regarding his involvement in the interviews and the roles played by Graf and Ustich.  Doc: 13-1 at pp. 22-23.  Kim maintains that if the court had considered his qualified immunity claim individually and apart from Graf and Ustich, it would have concluded that the Wheeling officer's actions on April 16, 2009 could not have proximately caused Koh's confession.  Koh does not explain how Kim's purely legal argument regarding proper methodology for conducting a qualified immunity analysis depended on the allegedly disputed contention that the defendant

did not cause the plaintiff to confess.  Koh's failure to indicate how Kim's argument

depends on the alleged matter of dispute renders the Appellee's assertion irrelevant for

the jurisdictional issue.

                i.      Kim Incorrectly Asserted The District Court Analyzed Only
                        One Of His Actions.

Koh refers to Kim's brief at p. 44 where the Appellant analyzes the District

Court's application of *Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) to his summary judgment

motion.[2]  Kim notes that, "[i]n the first paragraph of its discussion of *Hurt*, the District

Court identifies three ways in which the interrogating officers 'extracted a confession

using tactics strikingly similar to Graf's.'"  Doc: 13-1 at 44.  Kim observed that the

District Court identified ways in which it found the facts in the instant matter were

worse that the facts in *Hurt*.  The defendant then states, "Kim receives a single mention

through the entirety of the District Court's analysis."  *Id*.

Assuming, without conceding, that Kim incorrectly indicated the number of

times he was mentioned in the District Court's discussion of *Hurt v. Wise*, such a

mistake is irrelevant to this Court's jurisdiction over the defendant's appeal.  The

discussion of *Hurt v. Wise* comes within Kim's long argument that he should receive

qualified immunity because the law at the time of the interviews with Koh was not

---

[2] The Seventh Circuit, in *Lewis v. City of Chicago*, 2019 WL 289104 (decided January 23, 2019), overruled
*Hurt v. Wise*.  The Seventh Circuit stated in *Lewis* that, "*Manuel I* makes clear that the Fourth Amendment,
not the Due Process Clause, governs a claim for wrongful pretrial detention.  To the Extent *Hurt v. Wise*,
880 F.3d 831, 843-44 (7th Cir. 2018), holds otherwise, it is incompatible with *Manuel I* and *II* and is
overruled.  2019 WL 289104 at * 1.

clearly established so that he had notice that his actions on April 16, 2009 would violate the Fifth Amendment prohibition on coerced confessions.  Koh provides no explanation whatsoever as to how this argument could be predicated on and inseparable from a misrepresentation as to how many times the District Court mentioned Kim during its *Hurt v. Wise* commentary.

Koh presents a number of allegedly disputed facts which purportedly "infect" Kim's arguments and make them unreviewable by this Court.  However, Koh offers little, if any, argument to show how the examples of allegedly disputed facts disqualify Kim's legal arguments from review by this Court.  Therefore, Koh's jurisdictional challenge to Kim's appeal should be disregarded.

II.     The District Court Erred When It Denied Kim Qualified Immunity.

Turning to the merits of Kim's argument that the District Court erred when it denied his motion for summary judgment based on qualified immunity, the Appellant makes two arguments.  First, the District Court erroneously concluded that Kim violated Koh's Fifth Amendment protections against coerced confessions.  The basis of the District Court's mistake was its failure to consider Kim's qualified immunity claim individually, apart from Graf and Ustich.  Doc: 13-1 at pp. 16-21.  If the District Court had followed the requirements of Seventh Circuit case law and analyzed Kim's situation individually, it would have found the Wheeling officer lacked requisite intent to coerce a confession from Koh in violation of the Fifth Amendment's self-

incrimination clause.  *See, e.g., Bakalis v. Golembeski*, 35 F.3d at 326-327; *Petties v. Carter*, 836 F.3d at 731-733; *Estate of Williams by Rose v. Cline*, 902 F.3d at 651.  Second, the District Court erroneously determined that clearly established law at the time of Koh's interrogation provided a reasonable officer in Kim's position with notice that his actions likely would violate the Fifth Amendment's prohibition against coerced confessions. Specifically, Kim argued that application of the Supreme Court's precepts governing "clearly established law" for purposes of qualified immunity clearly indicate that the District Court committed a mistake of law in determining that the Appellant was on notice that his conduct during Koh's interrogation deprived the plaintiff of his constitutional rights.  Doc: 13-1 at pp. 32-47.  Koh's assertions regarding the merits of Kim's argument are unpersuasive.

> A.  This Court Should Find That Kim Did Not Violate Koh's Fifth Amendment Protections Against Coerced Confessions.

Koh ignores the considerable specificity required to place a reasonable officer on notice that his conduct was clearly unlawful, despite the Supreme Court's guidance that "clearly established law should not be defined at a high level of generality."  *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017) (quoting *White v. Pauly*, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017).  Koh, instead, offers general statements of law that could not have given Kim fair and clear warning that his conduct was unconstitutional.  Koh's inability to cite a single case in this regard entitles Kim to qualified immunity.  *See Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996) ("[o]nce a public official raises the defense of

qualified immunity, the plaintiff bears the burden of proof on the issue"). Further, Koh's discussion of Graf and Ustich's actions cannot be imputed to Kim. The District Court failed to individually assess Kim's actions, though required in a qualified immunity analysis. *Estate of Williams by Rose v. Cline*, 902 F.3d at 651; *Petties v. Carter*, 836 F.3d at 731-33. Koh has made the same mistake here, in an attempt to bolster his arguments against an unknowing, and minimally-involved Kim.

"Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). A right is "clearly established" when it is "'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id*. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' " *Id*. (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 742, 131 S. Ct. 2074). No caselaw cited by the District Court or Koh in his reply comes even near to this standard.

Whether an interrogation is clearly unlawful "depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Mullenix v. Luna*, 136 S.Ct. at 309. An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,*134 S.Ct.

19

2012, 2023 (2014).  In this light, the specificity element is an essential part of the qualified immunity standard, which both the District Court and Koh failed to include in their discussions of Kim's actions.

Rather than address the extensive analysis that Kim provides in his initial brief on the absolute dearth of any caselaw that would have guided him as an interpreter, Koh ignores Kim's exhausting exercise and labels it as unpersuasive.  Then, Koh turns to overly general contentions in caselaw, lumping Kim's actions in with Graf and Ustich, in an attempt to support his contention that the specific coercive factors found by the District Court were also attributable to Kim.  (Doc: 35 at 35-38, 44-46).  Rather than support his position against Kim's arguments with relevant (or any) caselaw, Koh instead tries to insist that it was Kim's responsibility to see into the future and avail himself of the ruling in *Carrion v. Butler* to guide him in his actions during the interrogation.  835 F.3d 764 (7th Cir. 2016); Doc: 35 at 45.  Because of his failure to identify even a single case demonstrating that Kim's actions were beyond a doubt illegal, Koh's arguments must fail.  *See City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774. (2015).

      B.     This Court Should Reject Koh's Undeveloped Contentions That Kim's Arguments Demonstrating The District Court Erred In Determining Clearly Established Law Provided Kim Notice That His Conduct Violated Koh's Fifth Amendment Rights Are Unpersuasive.

The District Court summarized why it denied Kim summary judgment on his qualified immunity claim when it stated that, "[a]nd a reasonable officer assigned to

interpret for that suspect [Koh] would have recognized that manipulating his deficient understanding of English, mistranslating the *Miranda* warnings, and altogether refusing to provide translation assistance, likewise violates the Constitution." Appx. at pp. 44-45. Accepting the conclusion the District Court expressed in this sentence, Kim stated the legal question for this Court's consideration as, ". . . whether a reasonable officer assigned to interpret for Koh on April 16, 2009 who performed his work in the manner described by the District Court had notice that his actions violated the Plaintiff's Fifth Amendment rights." Doc: 13-1 at p. 33.

The Appellant analyzed the case law the District Court offered in reaching its conclusion that Kim had notice that his actions violated the Fifth Amendment, and concluded that none of the District Court's cases addressed the contours of the situation Kim confronted on April 16, 2009. Doc: 13-1 at pp. 32-35. This analysis included examination of the federal appellant case law referenced by the District Court which involved law enforcement or immigration officials questioning non-English speakers. Kim's analysis revealed that none of the District Court's cases satisfied the Supreme Court's requirements for clearly established law which would have put a reasonable officer in Kim's position on notice that his performance as a translator could violate Koh's Fifth Amendment rights. *Id*. at 36-42.

Koh makes no attempt to respond to Kim's clearly established law analysis which shows the District Court erred when it denied qualified immunity to the

Wheeling officer.  The arguments Koh does offer include: (1) Kim provided incomplete and misleading *Miranda* warnings; (2) Kim played an important role throughout the interrogation; and (3) Kim makes citations to utterly irrelevant cases.  Doc: 35 at pp. 41, 45.  These arguments fail to address, much less refute, Kim's argument that the law discussed by the District Court did not provide a reasonable officer in Kim's circumstances notice that his actions during the interviews could violate the plaintiff's Fifth Amendment protections against coerced confession.

      1.      Kim Provided Incomplete And Misleading *Miranda* Warnings.

This contention ignores a basic point.  The crux of Kim's clearly established law argument holds that, conceding all the District Court's findings regarding his performance serving as Koh's interpreter, the Appellant should have received qualified immunity because the law as established on April 16, 2009 did not warn him that his conduct violated the plaintiff's Fifth Amendment rights.  Without some explanation from Koh, Kim's acceptance of the District Court's findings renders the assertion about incomplete and misleading *Miranda* warnings irrelevant to the legal question Appellant poses to this Court.  Koh makes no attempt to provide such an account.

      2.      Kim Played An Important Role Throughout The Interrogation.

Koh does not explain what he means with the assertion that Kim played an important role during the interrogation.  Kim does not dispute that he played a role in Koh's interrogation.  Nor does he contest the District Court's characterization of his part

in the interviews.  Kim's point is that accepting the District Court's determinations about his role, the clearly established law did not provide him notice that his actions could violate the Fifth Amendment.  The District Court's contrary conclusion was a mistake of law.  Without some explication showing how the contention that Kim played an important role in the interrogations bears on the Wheeling officer's argument, Koh's assertion is ineffectual.  Koh, again, does not set forth this needed explanation.

### 3.      Kim's Argument Depends On Utterly Irrelevant Cases

The appellee focuses on two cases which Kim referenced to support the statement that, "Koh simply cannot provide this Court with any clear legal guidance that Kim's actions during the interrogation were unconstitutional whatsoever to contradict the interpreter-related case law, which gives wide latitude to the actions of interpreters in custody-related situations."[3]  Doc: 13-1 at p. 32.  Koh's characterization of these cases as irrelevant is suspect.  Both cases involve law enforcement personnel engaging in translation for persons needing assistance.  Each case considers the question of whether the plaintiff's constitutional rights were violated as a result of an officer's language interpretation.  And both cases concluded that no constitutional rights were violated.  Even if these cases were "utterly irrelevant" to Kim's appeal, Koh makes no attempt to explain why the Appellant's citation to this case law undermines the lengthy and detailed analysis the Appellant set forth to demonstrate that the District

---

[3] The cases cited by Kim were *U.S. v. Romo-Chavez*, 681 F.3d 955, 959-61 (9th Cir. 2012) and *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 593 (7th Cir. 2002).

Court mistakenly concluded he was not entitled to qualified immunity.  Therefore,

Koh's characterization of the two cases he mentions, even if correct, is immaterial.

      4.     Koh's Remaining Comments About Kim's Qualified Immunity
             Arguments Are Ineffective.

      Koh offers several other scattershot comments about Kim's arguments.  In a

footnote, Koh represents that Kim "contends he is entitled to immunity unless he

violated law that was clearly established *by a holding of the Supreme Court*."  Kim 28-31

(emphasis in the original) Doc: 35 at p. 33.  This is a truly puzzling remark.  The pages

cited by Koh refer to a section of Kim's brief titled, "The Sources Of 'Clearly Established

Law' As Identified By the United States Supreme Court."  Kim explicates the Supreme

Court's opinions in *Taylor v. Barkes*, 135 S.Ct. 2042 (2015) and *City and County of San*

*Francisco v. Sheehan*, 135 S.Ct. 1765 (2015), and concludes his discussion with the

statement that, "[t]he *Taylor* and *City and County of San Francisco* decisions indicate that

Supreme Court case law should be the primary source for clearly established law."

Doc: 13-1 at p. 31.  This observation does not contend Kim is entitled to immunity

unless he violated law that was clearly established by a Supreme Court holding.

Further, what Kim does represent – the primary importance of Supreme Court opinions

– is axiomatic.  Koh's obvious distortion of Kim's argument undercuts his further

contention that the appellant's position "contradicts this Court's repeated statement

that 'it is of no moment that the Supreme Court has never expressly held that this

conduct violates the Constitution; it is enough that officials have 'fair and clear

warning' that their conduct is prohibited under earlier precedents." Doc: 35 at p. 33.

Kim does not express in his brief that lack of Supreme Court precedent means officials

cannot have fair notice that their conduct violates clearly established law.  Indeed, Kim

notes in the very next sentence of his brief that the *Taylor* and *City and County of San*

*Francisco* cases also indicate, "[o]pinions from the Circuit Courts of Appeal may supply

clearly established law through 'a robust consensus of cases of persuasive authority.'"

Doc: 13-1 at p. 31.

  In another footnote, Koh states that, "Kim notes that *Carrion* issued after Koh's

interrogation.  It strains credulity to think that Kim had to read that opinion before he

knew that it was unlawful to purposely 'manipulate or mistranslate' statements to make

them more incriminating."  Doc: 35 at p. 45.  Whether Koh likes it or not, the time when

law becomes clearly established matters.  *See, e.g., Mitchell v. Forsyth*, 472 U.S. at 533-534.

Koh does not identify law with which Kim should have been familiar that would have

informed him that it was illegal to purposely manipulate or mistranslate statements to

make them more incriminating.

  Further, assuming that Kim's participation in Koh's interviews at the Northbrook

police station went beyond his work as an interpreter, he still would be entitled to

qualified immunity.  Indisputably, Kim did not run the interviews – Graf, with

assistance from Ustich, conducted the questioning.  Nothing in the record before the

District Court suggests Kim made decisions regarding the use of particular

interrogation techniques.  Kim did not participate in the meeting between the first and

second interviews.  Consequently, all the arguments set forth by Graf and Ustich as to

why they lacked notice from clearly established law that their actions violated Koh's

Fifth Amendment protections from self-incrimination apply with even more force with

regard to Kim.

       C.      The Admission Of Koh's Confession At Trial Severed The Causal Chain
                 Thereby Entitling Kim To Qualified Immunity.

Kim refers to and incorporates into his reply the arguments set forth by Graf and

Ustich regarding superseding causation and qualified immunity in Section IV of their

reply brief.

Conclusion

For all the above-stated reasons, Defendant-Appellant Kim respectfully requests

that this Honorable Court grant him qualified immunity and dismiss the Plaintiff's Fifth

Amendment claim (Count II), with prejudice.

Respectfully submitted,

SUNG PHIL KIM

By: /s/ Allen Wall

Allen Wall

Allen Wall
James V. Ferolo
Carmen P. Forte, Jr.
KLEIN, THORPE AND JENKINS, LTD.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
(312) 984-6400
jawall@ktjlaw.com
jvferolo@ktjlaw.com
cpforte@ktjlaw.com

Certificate of Compliance

The undersigned certifies that the foregoing Brief of Defendant-Appellant Sung Phil Kim complies with the type-volume limitation of Circuit Rule 32(c) because it contains 6,648 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) that do not count toward the word limitation.

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2010 in 12 point Palatino Linotype font.

Dated:  January 30, 2019

/s/ *Allen Wall*
Allen Wall
One of the Attorneys for Appellant

28

Certificate of Service

The undersigned hereby certifies that on January 30, 2019, the Reply Brief of

Defendant-Appellant Sung Phil Kim was filed with the Clerk of the Court for the

United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF

system. I certify that all participants in the case are registered CM/ECF users and that

service will be accomplished by the appellate CM/ECF system.


/s/ Allen Wall
Allen Wall